E. L. SCARBROUGH ET AL. v. H. W. EUBANK.

No. 824.    Decided November 13, 1899.

1. Elections—Manner and Time of Ordering.

The important matter in every election is that the will of the voters should be fairly expressed, correctly declared, and legally enforced. Compared to this, the question as to the manner and time of ordering the election is of trivial importance. (Pp. 107, 108.)

2. Same—Removal of County Seat—Contested Election.

The determination of an officer empowered to order an election for the removal of the county seat, upon the written application of not less than one hundred freeholders, resident citizens, that the requisite number of qualified persons had so applied, was conclusive in a suit brought to contest the validity of an election held in pursuance of such order. (Pp. 108-110.)

QUESTION CERTIFIED from the Court of Civil Appeals for the Second District, in an appeal from Hartley County.

The certificate under the Act of May 9, 1899 (Laws 1899, p. 170), was made upon the ground that the conclusion reached by the Court of Civil Appeals was in conflict with the ruling in the Fifth District, in Buckler v. Turbeville, 17 Texas Civil Appeals, 120.

*Plemons & Veale,* for appellants.—Conceding that the court had jurisdiction to hear and determine the matter under consideration, then we insist that the petition or grounds of contest, together with the notice prescribed by the Statute, were and are sufficient—and not subject to general demurrer—for the court to let in the proof of the matters alleged therein. Constitution, art. 5, sec. 8, art. 9, sec. 2; Rev. Stats., arts. 812, 1797, 1804t; Ex Parte Towles, 48 Texas, 413; Johnson v. Holland, 43 S. W. Rep., 71.

The court erred in sustaining contestee's second special exception to contestant's statement of their grounds of contest; for this, that under the law of 1895 authorizing and clothing the district courts with power to hear and determine contests growing out of elections, it was the manifest intention of the Legislature to permit said courts to investigate all questions appertaining to the election in question, either before the day of the election, or on that day; the ordering of the election by the county judge, being only a ministerial act, is the subject of investigation in this character of action, as well as any other act incident to or connected with the result of the election. Rev. Stats., art. 4343; Williamson v. Lane, 52 Texas, 335; Wright v. Fawcett, 42 Texas, 203; Ex Parte Towles, 48 Texas, 413; 10 Am. and Eng. Enc. of Law, 2 ed., 800.

On the proposition that the remedy by quo warranto is only cumulative, we cite Rev. Stats., art. 4343; McAllen v. Rhodes, 65 Texas, 351.

*W. Boyce,* for appellee.—The courts in statutory contested election cases can not go outside the special provisions of the statutes authorizing

such contests for authority and rules of procedure; and under the provisions of our statutes our courts can not inquire into the legality of the election, but their power is limited to the determination of the result of the election itself, or, if that can not be ascertained from the evidence, to the ordering of a new election. Williamson v. Lane, 52 Texas, 345; Odell v. Wharton, 27 S. W. Rep., 123; Buckler v. Turbeville, 43 S. W. Rep., 810; Rev. Stats., arts. 1804e, 1804f; 6 Am. and Eng. Enc. of Law, 390; Allen v. Glynn, 15 Law. Rep. Ann., 746; Greenwood v. Murphy, 23 N. E. Rep., 421; Rafferty v. McGowan, 27 N. E. Rep., 194; Davis v. City Council, 17 S. E. Rep., 110; Swepston v. Barton, 39 Ark., 556.

The court erred in overruling contestee's first special exception to contestants' statement of their grounds of contest for this reason: The county judge's decision as to the sufficiency of the petition asking for the ordering of the election was a judicial or quasi judicial act, and such acts are as conclusive in all collateral proceedings as a judgment of a court of record, and hence can not be collaterally attacked for fraud. (1) Proposition considered in light of general principles of law. (a) That the county judge's action was judicial: Comm'r Land Office v. Smith, 5 Texas, 479; 4 Am. and Eng. Enc. of Law, 412: (b) As to the conclusiveness of judicial acts of officers generally: Throop on Pub. Off., arts. 552-555. (c) That this proceeding is a collateral attack: Crawford v. McDonald, 33 S. W. Rep., 327; 12 Am. and Eng. Enc. of Law, 147j. (d) A judgment can not be collaterally attacked for fraud: Williams v. Hays, 13 S. W. Rep., 1029; Mikeska v. Blum, 63 Texas, 46. Decision of a court that it has jurisdiction conclusive: Black on Judg., art. 2740. (2) Case Law on Proposition Submitted: State v. Goodwin, 69 Texas, 58; 7 Am. and Eng. Enc. of Law, 2 ed., 1032; Currie v. Paulson, 45 N. W. Rep., 855; State v. Langlie, 67 N. W. Rep., 960; Rickey v. Williams, 36 Pac. Rep., 480; State v. Nelson, 21 Neb., 578; Ellis v. Karl, 7 Neb., 385; Baker v. Board of Supervisors, 40 Iowa, 229; Bennett v. Hetherington, 41 Iowa, 142; Railway v. Evansville, 15 Ind., 395.

GAINES, CHIEF JUSTICE.—In this case the Court of Civil Appeals have certified, both under the Act of May 9, 1899 (Laws of 1899, page 170), and under article 1043 of the Revised Statutes, the following question for our decision:

"Whether, in a suit brought in 1896 to contest the validity of an election held for the removal of a county seat, it was competent to contest the validity thereof upon the ground that the county judge had no authority to order it, because of the disqualification of the applicants for the election, the applicants not so disqualified being less than the requisite number as prescribed by statute."

The object of a popular election is that the will of the greater number of the voters may prevail. This greater number may be a plurality or a majority in a greater or less degree, as the law may provide for the

particular case. Hence the important matter in every election is that the will of the voters should be fairly expressed, correctly declared, and legally enforced. Compared to this, the question as to the manner and time of ordering the election is of trivial moment. Ordinarily, when elections are to be held which recur at stated periods, such as those for the election of officers to administer the government, it is made the duty of certain officials to call the election, without action on part of any person. But in all elections of a local option character, such as for prohibiting the sale of intoxicating liquors, to prevent the running at large of live stock, the removal of county seats, and the incorporation of towns and cities, it is essential, in order to give effect to the laws which provide for such elections, that some officer, board, or tribunal should be empowered to order the election, and that it should be made a duty so to order it upon the occurrence of certain conditions,—usually, the presentation of a petition signed by a certain number of legal voters, freeholders or taxpayers, according to the nature of the matter upon which the vote is to be taken. According to the varying views of legislative bodies, these numbers are sometimes few and sometimes many. For example, in case of an election to remove a county seat, in some of the States it seems that the petition must be signed by a majority of the voters. The number ought to be sufficient to give some assurance that there exists a desire on part of a large proportion of the voters for the change to be voted for, and that there is a probability that in case the election be ordered the proposition will carry. An election ought not be ordered when the measure is likely to be defeated and a useless expense incurred. This is the foundation of the policy which determines the number of applicants necessary to procure an order for an election. Hence the Legislature might deem it a matter of no serious moment that the officer or tribunal to whom the duty of ordering the election is intrusted should make a mistake as to the qualification of one or more of the signers and should expressly or impliedly make their decision as to the competency of the petitioners final, at least after the election has been held. It would seem more politic to make the determination of the county judge conclusive than to permit the question to be inquired into upon a contest, and the election to be annulled after a legal majority have voted for the change sought to be accomplished. Accordingly the weight of authority, as it seems to us, is against the right to call in question the qualifications of the signers to the petition in a contest of the election. The precise question, so far as we have been able to discover, has never been decided in this court; but we think the principle which controls its decision was announced and acted upon in the case of the State v. Goodwin, 69 Texas, 55. In that case, the county judge had ordered an election to determine whether or not the city of Wills Point should be incorporated under the general law. He was empowered to order the election upon presentation of a petition therefor signed by fifty electors and satisfactory proof that the city had the requisite population for a municipal corporation of the class designated. It was sought

to set aside the election on the ground that the county judge erroneously found that the city contained the necessary number of inhabitants. It was held that the action of the county judge was not subject to review. It seems to us that the ruling would necessarily have been the same had the attack been made upon the ground, that, of the fifty names signed to the petition, there were less than fifty who were legal voters. The only apparent difference is that in the one case the statute expressly requires that the judge shall be satisfied by proof as to the required population, while in the other nothing is said as to his hearing proof as to the competency of the petitioners. But it is obvious that what is expressly demanded in the one instance is impliedly required in the other. In the latter case, before the judge is authorized to act upon the petition of fifty electors, he must determine that fifty qualified voters living in the designated territory have signed the petition. So that if his determination of the question be conclusive as to the one matter, why not as to the other? The case of Currie v. Paulson, 43 Minnesota, 411, is directly in point. In that case, the court say:

"Without passing upon the correctness of any of the premises assumed by contestants, or deciding for what causes, occurring before the election itself, an election may on contest be held void, we are clear that (at least in the absence of fraud) the certificate of the county board as to what signatures, if any, are improperly on the petition, is final and conclusive; and that if from that certificate, as made and filed, it appears that there remain on the petition the required number of names, it is the duty of the county auditor to make his order for the election, and that an election held in pursuance thereof will be valid, notwithstanding any mistake or error committed by the board as to the facts submitted to their determination regarding the names improperly on the petition. In the very nature of things, the determination of the board on this matter must be final and conclusive." And again: "There are manifest reasons why the determination of the board of commissioners as to these facts should be final. It is the vote of the electors at the election, and not the signatures to the petition, which determines the location of the county seat. The main, if not sole, purpose of requiring the petition in favor of a change before ordering an election is to save the public from the expense, loss of time, and excitement incident to such an election, unless there is a reasonable probability that the required majority of electors will vote for the change. To go back of the action of the county board and reverse their determination as to these facts after the election is passed and the change carried by the popular vote, would certainly subserve no good purpose." See also Baker v. The Board, 40 Iowa, 226; Bennett v. Hetherington, 41 Iowa, 142; The Board v. Lewis, 61 Ind., 75; State v. Nelson, 21 Neb., 572. Speaking of an election ordered by a county judge upon a petition of taxpayers, the Supreme Court of the United States say: "The county judge unquestionably had jurisdiction to decide upon the application made by the taxpayers." Town of Lyons v. Munson, 99 U. S., 684.

The remark was made in a bond case and probably was not necessary to its decision. It tends, however, to show the opinion of the judges then composing that high tribunal upon the question before us.

If, as we think, the decision of the officer ordering the election as to the competency of the signers of the petition was intended to be final, it follows that the question certified must be answered in the negative; and it is unnecessary for us to enter into the broader question as to what may be inquired into upon a contest of an election and what not.