Tom TODD, County Judge, Petitioner,

v.

J. W. HELTON et ux., Respondents.

No. B–3489.

Supreme Court of Texas.

April 4, 1973.

Coleman, Whitten & Philips, Michael J. Whitten, Denton, for petitioner.

McDonald, Sanders, Ginsburg, Phillips, Maddox & Mewkirk, Atwood McDonald, Fort Worth, L. A. Nelson, Denton, Llewellyn & Kerr, Ben J. Kerr, III, Dallas, for respondents.

REAVLEY, Justice.

When the county judge orders an election to be held upon the question of the incorporation of a town, and if he does so by determining the requisite number of inhabitants therein on his assumption of verity of the affidavits submitted by the applicants, may he effectively revoke that order upon discovering the affidavits to have been false? The trial court has ruled that the county judge retains his fact finding power after he enters his order and may revoke the order upon a subsequent redetermination. The Court of Civil Appeals has held that the order, once it has been made, cannot be revoked. 481 S.W.2d 910. That judgment is here reversed. It is the view of the writer and three justices that if the order calling the election follows a determination of prerequisite fact by the county judge which would otherwise be final and if his determination and resulting order are based upon false affidavits, the county judge may rescind his order prior to the election.

This is a mandamus suit, brought to compel Honorable Tom Todd, County Judge of Denton County, to canvass the returns and declare the result of the election as to the incorporation of Corral City. On August 20, 1971, a petition was presented to Judge Todd which sought the incorporation of the town, and it was accompanied by an affidavit in which affiants stated that the 207 persons listed were inhabitants of the area proposed to be incorporated. The statutes require that there be more than 200 inhabitants and provide that "[i]f satisfactory proof is made that the town or village contains the requisite number of inhabitants, the county judge shall make an order for holding an election . . . for the purpose of submitting the question to a vote of the people." Arts. 1133, 1136, Vernon's Ann.Civ. St.

Judge Todd made the order on August 20, which called the incorporation election for September 4. However, on August 26, ten affidavits were presented to him in which each affiant was shown to be included on the list of the 207 inhabitants of Corral City but thereupon swore that neither he nor any member of his household had ever resided in the area. On August 30, Judge Todd set aside his original order and then ordered that the election not be held.

The election was nevertheless held on September 4, and the returns were tendered to the County Judge on September 10. When he refused to canvass them, this suit was brought to compel him to do so.

In his answer Judge Todd pleaded that he retained jurisdiction over his own order and that there was no lawful basis for the election since he determined that the area to be incorporated did not have more than 200 inhabitants. He also pleaded that the original order was obtained through fraud: that material misrepresentations were knowingly made that certain persons were inhabitants of the area, that this was done to get him to call the election, that he did not know the representations to be untrue and was induced thereby to call the elec-

tion, and that he "would not have signed said order calling the incorporation election absent said false representations."

The trial court granted a motion in limine preventing Judge Todd from offering any evidence as to the actual number of inhabitants of the territory proposed to be incorporated. The proof was made by stipulation, and this included a stipulation that the ten affidavits were filed with Judge Todd on August 26. The trial court made no determination as to the actual number of inhabitants or as to the allegations of Judge Todd that his order was obtained by the use of false affidavits. The conclusions of law made after judgment included this: "Respondent had power to revoke the election order at any time before the proceedings contemplated thereunder were finally consummated."

The Court of Civil Appeals held that the order of August 20, "which set in motion the election process was final and conclusive" (481 S.W.2d 911) upon the authority of Perkins v. Ingalsbe, 162 Tex. 456, 347 S.W.2d 926 (1961).

In the *Perkins* case an attempt by a county judge to revoke his order calling an election was held to be ineffective, and he was compelled by mandamus to accept the election returns. However, there are two factors present here which were not present in *Perkins*. Judge Todd has alleged that fraudulent means were used to induce him to make the original order. Also, the determination of the requisite number of inhabitants in the area proposed to be incorporated is for the county judge to resolve, and his decision is conclusive. It was pointed out at two places in the *Perkins* opinion that the election order there had not been revoked because of any issue as to the number of inhabitants, and this court held that under the facts the county judge had no discretion but that his entry of an order calling the election was mandatory.

Questions pertaining to fixing the boundaries of the town are not for the county judge to decide. He may be compelled by mandamus to order an election even though he regards the area not to constitute a town, Reagan v. Beck, 474 S. W.2d 935 (Tex.Civ.App.1971, writ ref'd, n.r.e.); and the improper inclusion of farm land may be attacked by subsequent quo warranto action. Ewing v. State, 81 Tex. 172, 16 S.W. 872 (1891). On the other hand, the county judge is the one who decides the question of whether the number of inhabitants in an area complies with statutory requirements, and his decision cannot be dictated or attacked in court so long as he acts in good faith. State v. Goodwin, 69 Tex. 55, 5 S.W. 678 (1887); State v. Town of Clyde, 18 S.W.2d 202 (Tex.Civ.App.1929, writ ref'd); Wolf v. Young, 277 S.W.2d 744 (Tex.Civ.App.1955, writ ref'd n.r.e.); *see* School Board of City of Marshall v. State, 162 Tex. 9, 343 S.W.2d 247 (1961); Scarborough v. Eubank, 93 Tex. 106, 53 S.W. 573 (1899); Boynton v. Brown, 164 S.W. 893 (Tex. Civ.App.1914, writ ref'd).

The general rule is stated in the *Perkins* case that when a petition complies with the statutory requirements and vests the county judge with jurisdiction to order the election, he may not interfere with the election process by attempting to revoke his order. Furthermore, if the order calling the election cannot be set aside, the canvassing of the votes is a ministerial act which may be obtained by mandamus. Grant v. Ammerman, 437 S.W.2d 547 (Tex.1969). The *Perkins* opinion quotes from Cameron v. Baker, 13 S.W.2d 119, 120 (Tex.Civ.App.1929, no writ) where it is said that the power to issue ex parte orders to election judges "would be a dangerous power lodged in the hands of a county judge. . . ." However, the misdeeds of applicants for an election should not be entitled to the protection of this rule, and an order obtained by false affidavits should not be beyond revocation. It would be a strange law that made the bad faith of the county judge a ground of attack upon his order but which placed beyond

everyone's reach his action taken in good faith upon the strength of affidavits later found to be false. It would be a bad law to shun placing dangerous power in the county judge and then to vest fraudulent applicants with the power to evade the statutory requirement as to the number of inhabitants requisite to holding an election for incorporation of a town.

It has been held that an order calling an election to organize a county may be annulled upon discovery of fraud of the petitioners and that a court may then enjoin the election. Oden v. Barbee, 103 Tex. 449, 129 S.W. 602 (1910). An election process may be aborted by the county judge in the event an area to be incorporated encroaches upon prior territorial jurisdiction of another city. Beyer v. Templeton, 147 Tex. 94, 212 S.W.2d 134 (1948); *Cf.* Hills and Dales v. Reeves, 459 S.W.2d 672 (Tex.Civ.App.1970, writ dism'd).

The trial court judgment cannot be affirmed because we do not agree that the county judge can call an election and then change his mind about the number of area inhabitants for any reason of his choosing. The county judge has the duty to make his determination prior to the entry of his order calling the election; but, in doing so, he is entitled to rely upon affidavits submitted to him for that purpose if he has no cause to suspect or disbelieve the truth of those affidavits. If he discovers them to be false, four justices would hold that he may rescind his order. But whether the order may be rescinded or the canvass cannot be compelled, it follows that if Judge Todd should prove that he was induced to make his determination of the number of Corral City area inhabitants by false affidavits, no mandamus will issue.

The judgment of the Court of Civil Appeals is reversed; the cause is remanded to the trial court for trial.

Concurring opinion by WALKER, J., in which DANIEL and JOHNSON, JJ., join.

Dissenting opinion by POPE, J., in which GREENHILL, C. J., joins.

WALKER, Justice (concurring).

■ It seems to me that any recognition of a power in the county judge to rescind the election order, even where it develops that his initial determination was based on false affidavits, is contrary to the established Texas law and is also unwise as a matter of policy. An announcement that his order has been rescinded will tend to discourage participation by the electorate and could change the results of the election, and yet the judge may be mistaken in his conclusion that the affidavits were false. The matter cannot be made the subject of a judicial inquiry until after the day of the election, and it will then be too late to remedy the harm done by the attempted rescission of the order.

■ While I would not hold that the judge may rescind his order on the ground that one or more of the affidavits is false, it is my opinion that the Court of Civil Appeals erred in ordering that a writ of mandamus issue directing petitioner to canvass the returns. Mandamus is an extraordinary writ, and its issuance rests largely in the sound discretion of the court. While it is a legal remedy, we have recognized that the writ is governed, in some measure at least, by equitable principles. It will not be granted, for example, where the relators, or one who will be benefitted by issuance of the writ, have been guilty of conduct that is violative of conscience and good faith. Rummler v. Reavley, 156 Tex. 138, 293 S.W.2d 638; Westerman v. Mims, 111 Tex. 29, 227 S.W. 178.

Mandamus issues to remedy a wrong, not to promote one. Turner v. Fisher, 222 U.S. 204, 32 S.Ct. 37, 56 L.Ed. 165. While relators may have been guilty of no wrong whatsoever, I would not issue the writ to compel the completion of a political process that was launched by false affidavits.

I agree that the writ should not issue if petitioner proves that he was induced to make his determination of the number of inhabitants in the area by false affidavits, and I concur in the judgment of reversal and remand.

DANIEL and SAM D. JOHNSON, JJ., join in this concurring opinion.

POPE, Justice (dissenting).

█ I respectfully dissent. In my opinion, the majority result disregards the settled rule that the officer who calls a special election and sets in motion the election process may not later revoke his order and defeat the election and the right of the people to vote. A more serious error, in my opinion, is that the court has empowered those who contest an election process to thwart the canvass of the votes. If it be the purpose of this court to overrule our prior decisions, I would do so in an appropriate quo warranto action after the votes have been regularly canvassed and the results declared.

Judge Todd formally called the election for the incorporation of Corral City, named the presiding officer, the election judges and clerks, and ordered notices posted and ballots printed. After all of these steps occurred, but four days before election day, Judge Todd revoked his order for the election. Notices were not given to the election officers and the election was conducted. All steps have now been completed except for canvassing the votes and declaring the results. The court of civil appeals in my opinion, correctly ordered Judge Todd, as the canvassing officer, to perform those ministerial functions.

I consider the rule well-established that an officer who calls an election may not revoke his order after the election process is set in motion. It is also well settled that, even in an appropriate quo warranto proceeding, it must be the fraud of the election officer as distinguished from that

of those petitioning for the election, which will invalidate the election. Judge Todd was in no way guilty of any fraud but acted in good faith in making and later revoking his election order. The trial court's findings of fact include no finding that those petitioning for the incorporation of Corral City were or were not guilty of fraud or that those who were contesting the election and who filed counter-affidavits were or were not guilty of fraud.

Whether fraud of the petitioners for election in stating the number of inhabitants of the proposed territory as distinguished from the fraud of the officer who calls the special election will invalidate an election should be decided in a quo warranto proceeding instituted after the completion of the election process, but since this court has remanded this cause for trial of the fraud issue in this mandamus action, it becomes necessary that we discuss the matter.

We held in Perkins v. Ingalsbe, 162 Tex. 456, 347 S.W.2d 926 (1961), that County Judge Ingalsbe could not revoke his order for the incorporation of Impact even though he was convinced that the election was not a bona fide election to incorporate, but was, instead, a plan to arrange a local option election. We held that he did not have the power to revoke his order, saying:

> We hold that because the petition was in due and legal form in compliance with the statutory requirements, and because the respondent had a hearing on the petition and found the statutory requisites present, and ordered the election and posted notices as required by law, it follows that the election process was lawfully put in motion and the County Judge could not prevent its being carried to its conclusion.

Chief Justice Gaines wrote in Scarborough v. Eubank, 93 Tex. 106, 53 S.W. 573 (1899), that the lack of the required statutory number of petitioners for the removal of a county seat did not render an election

invalid. The reason for the rule, he said, was the greater significance of an expression of the will of the voters at a popular election. He wrote, "Hence the important matter in every election is that the will of the voters should be fairly expressed, correctly declared, and legally enforced. Compared to this, the question as to the manner and time of ordering the election is of trivial moment." The reason for requiring a substantial number of petitioners for an election, according to Chief Justice Gaines, is to assure the officer who calls an election that an election will not be a useless procedure which will entail expense and loss of time with little probability of success.

Justice Stayton in State v. Goodwin, 69 Tex. 55, 5 S.W. 678 (1887), denied to the county judge who called an election the power to revoke his election call. As a matter of statutory construction, he ruled that there was a legislative grant of power to call an election but no grant of power to revoke the call.

The same is true of the present Article 1136.[1] The court in *Goodwin* said:

> After an election has been ordered and held, the result is required to be returned to the county judge, who is required, if a majority of votes have been cast in favor of incorporation, "within twenty days . . . to make an entry . . . that the inhabitants of the town . . . are incorporated . . .." * * * The statute evidently intended to make the finding of the county judge conclusive upon this question, for it provides no method by which his finding may be revised; and we are therefore constrained to hold, from the facts stated in the petition, that the territory had the requisite population. If the state desires to abolish a municipal corporation, created as provided by statute, it has ample power and means to do so; and it has placed in the hands of her people, living within the corporation, a means by which they can abolish it. Rev.St. 540. There is no averment of fraud on the part of the county judge, who passed on the questions necessary to be passed on before he could declare the corporation to have a legal existence, and it is unnecessary to inquire whether such an averment could authorize the courts to revise his findings.

In Burkett v. Town of Clyde, 18 S.W.2d 202 (Tex.Civ.App.1929, writ ref'd), there was posed the precise question:

> Can the county judge, by ordering an election where there are fewer than the requisite number of inhabitants, thus set at naught the law with the effect that redress will be denied to every one aggrieved by such action? *The test of the validity of such action, we think, is good faith on the part of the officer thus charged with the duty.* The action of the officer is at all times supported by a presumption that he did what it was his duty to do. If the judge orders such an election, knowing or having good reason to believe that there does not exist the requisite number of inhabitants, his act in doing so would, no doubt, be held to be fraudulent. *Unquestionably the law will relieve from the effects of fraud. But even in such case the fraud sufficient to invalidate his action must be such as is chargeable to the officer and not merely fraud of others by which the officer is led into error.* (Emphasis added.)

1. **Art. 1136.** If satisfactory proof is made that the town or village contains the requisite number of inhabitants, the county judge shall make an order for holding an election on a day therein stated and at a place designated within the town or village for the purpose of submitting the question to a vote of the people. He shall appoint an officer to preside at the election, who shall select two judges and two clerks to assist in holding it. After a previous notice of ten days, by posting advertisement thereof at three public places in the town or village, the election shall be held in the manner prescribed for holding elections in other cases.

The same lesson was taught in Word v. Schow, 29 Tex.Civ.App. 120, 68 S.W. 192 (1902, writ ref'd):

It seems to be conceded by the appellees that the above authorities treat the decision of the county judge as conclusive, in the absence of fraud; but they insist that fraud vitiates his decision, and opens it to attack. *It is a sufficient answer to this contention that no fraud was charged against the county judge in this instance. It matters not that false representations as to the number of inhabitants may have been designedly made to him, or that his decision may have been influenced by testimony that was not only false, but not believed by the witnesses to be true, as alleged.* That did not render the decision itself fraudulent and void, but only erroneous; and, as no provision has been made for the correction of such an error, the district court was without power to afford relief. Even in ordinary suits, false testimony, so far from infecting with fraud and annulling the judgment founded upon it, is but a ground for a new trial. (Emphasis added.)

Cameron v. Baker, 13 S.W.2d 119, 120 (Tex.Civ.App.1929, no writ), was cited with approval and quoted by this court in *Ingalsbe.* The court in *Cameron* said:

It would be a dangerous power lodged in the hands of a county judge to issue an ex parte order to election judges, while they are holding an election, to desist further action and proceed no further in the election, and no statute has ever granted such power to a county judge.

\* \* \* \* \* \*

The only power or authority given to the county judge to pass upon the sufficiency of the petition for the incorporation of a common school district is to receive the petition therefor, and to determine the facts presented to him in support of such petition, before the order of election is given by him and notice thereof issued. His power then ceases until after the election, when he is empowered to canvass the returns and declare the result. He has no power to interfere in any manner with the election after he has issued his order for the election. The statute has not given him any authority over the election after he has once ordered it.

City of El Paso v. Tuck, 282 S.W.2d 764 (Tex.Civ.App.1955, writ ref'd n. r. e.), cert. denied, 352 U.S. 828, 77 S.Ct. 43, 1 L.Ed.2d 50 says:

If the judge orders such an election, knowing or having good reason to believe that there does not exist the requisite number of inhabitants, his act in doing so would, no doubt, be held to be fraudulent. Unquestionably the law will relieve from the effects of fraud. *But even in such case the fraud sufficient to invalidate his action must be such as is chargeable to the officer and not merely fraud of others by which the officer is led into error.* (Emphasis added.)

### Quo Warranto Is the Proper Remedy

It may be that this court wishes to overrule the prior decisions that an inadequate number of petitioners for incorporation does not necessarily invalidate an election as well as the rule that it is the fraud of the officer who calls an election instead of the fraud of the petitioning electors which will void an election. I would rather review those decisions when the issue is posed by an appropriate quo warranto case than by a mandamus action which seeks to compel a canvass of the votes of an election already held.

By today's result, the power of a ministerial officer has grown strong indeed. As a supplement to his exercise of a ministerial duty, he has been granted new powers to exercise his judgment over wide-ranging election procedures. Instead of performing his ministerial duty to canvass votes, the canvassing officer can refuse and thus compel a mandamus action against himself.

The mandamus then becomes the vehicle for determining the merits of any number of problems generated by the whole election process. A simple canvass often ends the matter when the declared results show that the election failed.

The judgment in this case is an invitation to canvassing officers and boards to spurn their duty to canvass votes if they believe that there is no office in existence for which an election was conducted as was the case in Grant v. Ammerman, 437 S.W.2d 547 (Tex.1969), or the required number of names were not affixed to the petition to incorporate, or the required number of inhabitants for the proposed territory did not exist, or the plat or map of the territory was not sufficient, or the boundaries for the proposed territory did not close, or events occurred which thwarted the free election process, or for any number of other complaints about the election. These powers have previously been denied to the canvassing officers. Burks v. State, 51 Tex.Cr.R. 637, 103 S.W. 850 (1907). In *Ammerman, supra,* we held, "that a canvassing board may not pass judgment upon the qualifications of the voters, *may not pass judgment upon the regularity of an election call, may not declare an election void,* and may not supplant statutory procedures for the contest of an election." (Emphasis added.)

Today's result permits the injection of an unnecessary cause of action between the time an election begins and before it is completed. In this case, the point in time, is just before the canvass of the votes. In City of Dallas v. Dallas Consolidated Electric St. Ry. Co., 105 Tex. 337, 148 S.W. 292 (1912), this court held that elections, being essentially the exercise of political power, are exempt from such judicial interference. This rule has applied even to elections which are void. Leslie v. Griffin, 25 S.W.2d 820 (Tex.Comm'n App.1930, holding approved); Ex parte Barrett, 120 Tex. 311, 37 S.W.2d 741 (1931); City of Austin v. Thompson, 147 Tex. 639, 219 S. W.2d 57 (1949); cf. Oden v. Barbee, 103

Tex. 449, 129 S.W. 602 (1910). In City of Austin v. Thompson, *supra,* this court restated the law of Texas: "When it is declared that because of their relation to the political power of the government, elections are beyond the control of the judicial power, it is meant that the whole election, including every step and proceeding necessary to its completion, is exempt from judicial interference, and the canvassing of the returns of an election must therefore be held as within the rule and justly entitled to its protection."

Quo warranto is the proper and orderly remedy for questioning the validity of an incorporation election. Perkins v. Ingalsbe, 162 Tex. 456, 347 S.W.2d 926 (1961); School Board of Marshall v. State, 162 Tex. 9, 343 S.W.2d 247 (1961); City of El Paso v. Ruckman, 92 Tex. 86, 46 S.W. 25 (1898); Ewing v. State, 81 Tex. 172, 16 S.W. 872 (1891); State v. Goodwin, 69 Tex. 55, 5 S.W. 678 (1887); Burkett v. Town of Clyde, 18 S.W.2d 202 (Tex.Civ.App.1929, writ ref'd); Art. 6253, Vernon's Ann.Tex.Civ.Stats. (1879); 6A Lowe, Texas Practice, Remedies § 1202 (2d ed. 1973). In Ellis v. State, 383 S.W. 2d 635 (Tex.Civ.App.1964, no writ), an election to incorporate a town was invalidated for the same reason that Judge Todd here urges, that there were less than two hundred inhabitants in the territory. The successful attack upon the election was properly by way of quo warranto. There are some exceptions to this practice, but none of them apply here. An incorporation under an unconstitutional statute may be raised even in a collateral proceeding. Walling v. North Central Texas Municipal Water Authority, 162 Tex. 527, 348 S.W.2d 532 (1961); Parks v. West, 102 Tex. 11, 111 S.W. 726, 729 (1908). An entire lack of jurisdiction over the territory will render an incorporation attempt wholly void. Beyer v. Templeton, 147 Tex. 94, 212 S. W.2d 134 (1948); Reagan v. Beck, 474 S. W.2d 935 (Tex.Civ.App.1972, writ ref'd n. r. e.); Ellis v. State, 383 S.W.2d 635 (Tex.Civ.App.1964, no writ); Huff v.

Preuitt, 53 S.W. 844, rehearing denied 54 S.W. 610 (Tex.Civ.App.1900, no writ).

I would affirm the judgment of the court of civil appeals.

GREENHILL, C. J., joins in this dissent.